JOSHUA D. HURWIT, IDAHO STATE BAR NO. 9527
UNITED STATES ATTORNEY
FRANCIS J. ZEBARI, IDAHO STATE BAR NO. 8950
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
1290 W. MYRTLE ST. SUITE 500
BOISE, ID 83702-7788
TELEPHONE: (208) 334-1211
FACSIMILE:  (208) 334-1413

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ERIK KONRAD EHRLIN,<br><br>Defendant. | Case No. 1:21-cr-00145-BLW<br><br>**GOVERNMENT'S SENTENCING MEMORANDUM** |

The Defendant is a radicalized extremist that threatened and assaulted a U.S. Forest Service (USFS) Agent while in possession of firearms, items to impersonate a police officer, and rounds of high-caliber ammunition with the names of targets written on individual bullets.  The Government recommends the Court sentence the Defendant to a term of imprisonment of 115 months.

### NATURE AND CIRCUMSTANCES OF THE OFFENSE

In March and April of 2021, the USFS investigated a series of vandalism incidents where an individual marked Forest Service signs and property with markers and spray paint.  The

**GOVERNMENT'S SENTENCING MEMORANDUM - 1**

vandalism contained the emblem "SAI," which purported to stand for the Sovereign Alliance of Idaho.

 

The vandalism also contained threats to shoot federal employees.

 

Investigators developed a lead on a possible suspect when a witness in the Mann Creek area observed a freshly fallen tree while on a hike.  When returning, the witness observed the tree had been spray painted with the letters SAI and "Do Not Enter."  There was similar insignia and paint on adjacent snow.  The witness had only observed one individual in the immediate vicinity. The witness provided a report of the vandalism and a description of the individual to law enforcement.

USFS Special Agent Amy Harvey (SA Harvey) located an unoccupied camp trailer in the Mann Creek area that was registered to Ehrlin.  The physical description from the witness matched the information for Ehrlin contained in an Idaho database.  Idaho Fish and Game also reported two separate contacts with Ehrlin in the general area and provided information about a vehicle Ehrlin was associated with, a gray Nissan pickup.  A criminal history check revealed Ehrlin is a convicted felon.

**GOVERNMENT'S SENTENCING MEMORANDUM - 3**

Other individuals in the area reported seeing a male that matched the description of Ehrlin and his trailer in multiple locations where graffiti was later discovered.  On April 14, 2021, SA Harvey recovered a "Spartan Armor" cardboard box with numerous mid to large caliber bullet holes.  The target had been left in a camp area near Mann Creek.  Other campers present at the location indicated an individual similar in description to Ehrlin had been camping there prior to their arrival.  The backside of the box contained neon pink spray paint forming a circular target and bullseye pattern.  The paint was similar in color to graffiti in the surrounding area.  Expended 9mm and .22 long rifle caliber shell casings were recovered in the same location.

SA Harvey also located a paper plate that appeared to have been left as a directional marker.  The name "NATASHA" was written on the paper plate in black marker and the handwriting appeared similar to that left on one of the tagged signs.  Further investigation revealed Ehrlin is in a relationship with a woman named Natasha.

*Contact on April 30, 2021*

On the afternoon of April 30, 2021, SA Harvey and a Washington County Sheriff's Deputy (the Deputy) contacted Ehrlin at a campsite off Forest Service Road 19 in the Upper Mann Creek Recreation area.  As the Deputy arrived at the site, he observed Ehrlin walk behind a camper while carrying a child in backpack.  In the space underneath the trailer, the Deputy observed a semi-automatic rifle fall to the ground and Ehrlin pick the rifle back up.  Ehrlin then emerged from behind the camper, now carrying the child in his arms.  SA Harvey and the Deputy contacted Ehrlin and Ehrlin's mother and briefly talked about the graffiti in the area.  SA Harvey then asked to speak with Ehrlin away from his mother and child to address the potential federal firearm violation.  When asked, Ehrlin denied being "Erik Ehrlin" and SA Harvey requested he retrieve his identification.  Ehrlin stated his wallet was in his vehicle and walked

**GOVERNMENT'S SENTENCING MEMORANDUM - 4**



behind the camper.  SA Harvey followed. Ehrlin briefly stepped towards his camper where a rifle was located.  However, upon observing the Deputy walk around the opposite side of the camper, Ehrlin continued past the rifle.  The deputy located the rifle depicted above, then leaning up against the camper.  The Deputy asked if he could clear the rifle and Ehrlin replied, "it's not loaded."  The Deputy picked the rifle up and removed a loaded magazine.  There was not a round in the chamber, however.

Around this time, Ehrlin handed his child off to his mother, then walked over to his pickup truck. Ehrlin opened the door and appeared to be reaching low, near the front driver's



**GOVERNMENT'S SENTENCING MEMORANDUM - 5**

seat.  Ehrlin then entered the truck and locked the door.  SA Harvey attempted to open the door

and told Ehrlin to stop.  Ehrlin looked directly at SA Harvey.



Next, Ehrlin accelerated
while in reverse, striking SA
Harvey with his sideview mirror
on SA Harvey's ballistic vest and
body camera.  The screen captures
here, from the Deputy's body
camera, shows SA Harvey directly
in the line of travel of the truck's
tire.

As Ehrlin began to flee, SA Harvey fired three rounds into the truck's front right tire,

puncturing it and causing it to deflate.  Ehrlin was ordered out of his vehicle at gunpoint and

arrested.  Incident to Ehrlin's arrest, the Deputy searched Ehrlin's person.  In Ehrlin's pants

pocket, the Deputy located a Boise Police badge.  Ehrlin claimed he and his mother had found

the badge while out hiking.  The badge was not weathered, either on the shield or leather.  Ehrlin

is not, nor has he ever been, a law enforcement officer.



*Searches of the Truck, Residence, and Camper*

A search was conducted of Ehrlin's pickup truck after his arrest.  Later, his residence and camper were searched pursuant to a federal search warrant.  In the truck, under the driver's side floormat, directly where Ehrlin appeared to reach before entering the vehicle, SA Harvey located a loaded 9mm handgun.

**GOVERNMENT'S SENTENCING MEMORANDUM - 7**

In the driver's side door was spray paint and markers, consistent with that used in the vandalism and threats.

 

In the center console was a red and blue LED light, handcuffs, and a "POLICE" patch.



In the backseat, a ballistic vest was located made by "Spartan Armor," the same brand as the cardboard box left in the camp area near Mann Creek.  The vest has velcro attachments where the POLICE patch could be affixed to.

**GOVERNMENT'S SENTENCING MEMORANDUM - 8**




At Ehrlin's residence, agents located two .22 caliber firearms on the kitchen table. A journal was also located that contained a "Sovereign Citizen's Oath." This same oath was found written on USFS property. The journal also contained references to SAI and the statement, "McLean, who's got your 6? S.A.I." Lauren McLean is the Mayor of Boise.




//

//

//



Finally, in Ehrlin's truck, agents located a bag that contained heavy-duty zip ties, duct tape, rubber gloves, a balaclava face mask, a flashlight, high-capacity magazines, and a bag of 7.62x39mm caliber ammunition.

 

**GOVERNMENT'S SENTENCING MEMORANDUM - 10**

The ammunition contained writing on many of the cartridges.  The writings included, "DIE McLean," "FUCK FEDS," and "FUK BLM."










The nature of the offense is serious and Ehrlin poses a serious risk of violence to those with political viewpoints that differ from his own radicalized beliefs.  Further, Ehrlin is a convicted sex-offender and was caught in possession of a semi-automatic rifle with a high-

**GOVERNMENT'S SENTENCING MEMORANDUM - 11**

capacity magazine.  When confronted with his crime, Ehrlin lied about his identity and attempted to flee from law enforcement.  In doing so, Ehrlin looked directly at SA Harvey, accelerated his truck while in reverse, and struck her.

Furthermore, Ehrlin possessed numerous items to impersonate a police officer.  These items included an actual Boise Police badge, a red and blue LED light, a ballistic vest, a POLICE patch, and tactical pants like those worn by Washington County Deputies.  This is especially concerning because Ehrlin also possessed heavy duty zip-ties (also known as flex cuffs), metal handcuffs, duct tape, gloves, a black balaclava mask, and ammunition with the names of individuals and entities on the cartridges.  The combination of these items demonstrates this case is different than the standard unlawful possession of a firearm case.  These are factors not accounted for in the Guidelines and should be reflected in the Defendant's sentence.

Ehrlin's conduct on April 30, coupled with the items found in his possession, demonstrate a serious danger to the community.  Ehrlin demonstrated he is willing to use violent force to evade capture.  But the danger he poses goes well beyond that.  He identifies as a sovereign citizen and does not adhere to federal authority.  Ehrlin wrote express threats about shooting federal employees.  And most significantly, Ehrlin possessed all the items needed to impersonate a police officer, to restrain an individual, and to do serious harm to others, including four firearms, twelve magazines, and spare rounds of ammunition.  The ammunition with names and entities on them, coupled with Ehrlin's ideology, dispels any innocent explanation for these items.

//

//

//

**GOVERNMENT'S SENTENCING MEMORANDUM - 12**



The nature and circumstances of the offense support a sentence of 115 months imprisonment.

## GUIDELINES CALCULATIONS

The Probation Office correctly calculated the Guidelines in the Final Presentence Report (PSR), with a total offense level of 26 and criminal history category of IV, yielding guidelines of 92-115 months.  The evidence articulated above amply supports the enhancements.  Regarding the possession of firearms in connection with another felony offense, U.S.S.G. § 2K2.1(b)(6)(B), Ehrlin made threats to shoot federal employees while feloniously defacing U.S. Forest Service Property.  Ehrlin was armed with two firearms, twelve magazines, and additional rounds of ammunition upon arrest.  Ehrlin fails to recognize that either "direct" or "circumstantial"

evidence "can be used to prove any fact" and that "[t]he law makes no distinction between the weight to be given to either direct or circumstantial evidence." NINTH CIRCUIT JURY INSTRUCTION 6.8. *See also United States v. Ramirez-Rodriquez,* 552 F.2d 883, 884 (9th Cir. 1977) ("Circumstantial and testimonial evidence are indistinguishable insofar as the jury fact-finding function is concerned, and circumstantial evidence can be used to prove any fact."). This case did not involve the mere presence of firearms. It involved express threats to shoot federal employees coupled, an assault of a federal employee, and firearm possession. The firearms "facilitated, or had the potential of facilitating," the felony crimes of Idaho malicious injury to property or felony depredation of U.S. Government property. U.S.S.G. § 2K2.1(b)(6)(B) App. n. 14(A).

Furthermore, Ehrlin fled SA Harvey while fully aware that she was directly in his line of travel and struck her with his full-size pickup truck weighing thousands of pounds. The Guidelines provide that the enhancement for reckless endangerment during flight applies where "the conduct was at least reckless and includes any higher level of culpability." U.S.S.G. § 3C1.2 App. n.2. The commentary to U.S.S.G. § 2A1.4, in turn, defines reckless as a "situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation." U.S.S.G. § 2A1.4 App. n.1. Ehrlin's assault on SA Harvey falls squarely within this definition.

Finally, when interviewed by the FBI regarding the assault, SA Harvey stated that when Ehrlin struck her with the truck, it felt like she was punched in the chest. The Probation Office correctly applied the Guidelines for assaulting SA Harvey.

//

**GOVERNMENT'S SENTENCING MEMORANDUM - 14**

## LIE DETECTOR TESTS

The Defendant submitted two lie detector tests for consideration with the Final PSR. However, "The reliability of polygraph evidence is widely debated." *United States v. Givens*, 767 F.2d 574, 585 (9th Cir. 1985) (citing *United States v. Marshall*, 526 F.2d 1349, 1360 (9th Cir.1975), *cert. denied*, 426 U.S. 923 (1976). "Multiple variables may influence the results of a polygraph test, including the motivation of the subject, his physical and mental condition, the competence, integrity, and attitude of the operator, the wording of the relevant questions, the appropriateness of the control questions, and the interpretation of the resulting graph." *Givens*, 767 F.2d at 585 (citing *United States v. Urquidez*, 356 F. Supp. 1363, 1366–67 (C.D. Cal. 1973)). Furthermore, in the trial context, courts routinely exclude polygraph evidence under Federal Rule of Evidence 403 as both unreliable and prejudicial. *See, e.g., United States v. Benavidez*, 217 F.3d 720, 725 (9th Cir. 2003); *see also United States v. Ramirez Robles*, 386 F.3d 1234, 1245–46 (9th Cir. 2004); *United States v. Bowen*, 857 F.2d 1337, 1341 (9th Cir. 1988) (upholding the exclusion of evidence that a polygraph test had been taken).

While the evidentiary rules do not apply at sentencing, the Government requests the Court decline to consider such evidence here. Ehrlin had significant motivation to fabricate results and minimize his criminal culpability. Furthermore, Ehrlin participated in the drafting questions he would answer. The Court did not have the benefit of seeing Ehrlin testify to any of these questions, nor has the Government had an opportunity to cross-examine Ehrlin. The Court plays a significant role in sentencing hearings in making credibility determinations and Ehrlin's attempted use of a polygraph seeks to obfuscate that role. The Ninth Circuit has upheld a district court's refusal to consider polygraph results at sentencing. *Givens*, 767 F.2d at 586 (holding that the "district court did not abuse his discretion in refusing to consider such evidence at

sentencing.")  The Government requests that this Court likewise refuse to consider Ehrlin's

polygraph evidence.

### FORENSIC MENTAL HEALTH ASSESSMENT

Ehrlin submitted for the Court's review a forensic mental health assessment.  The Court

should decline to grant a downward departure or variance based upon this assessment for

multiple reasons.  First, U.S.S.G. § 5K2.13, "Diminished Capacity," provides that:

> A downward departure may be warranted if (1) the defendant
> committed the offense while suffering from a significantly reduced
> mental capacity; and (2) the significantly reduced mental capacity
> contributed substantially to the commission of the offense.
> Similarly, if a departure is warranted under this policy statement, the
> extent of the departure should reflect the extent to which the reduced
> mental capacity contributed to the commission of the offense.

> However, the court may not depart below the applicable guideline
> range if . . . (2) *the facts and circumstances of the defendant's offense*
> *indicate a need to protect the public because the offense involved*
> *actual violence or a serious threat of violence*; (3) *the defendant's*
> *criminal history indicates a need to incarcerate the defendant to*
> *protect the public* . . . .

As detailed below, the Government contests the assessment that Ehrlin suffered from

diminished capacity.  However, even if he did, this Guideline explains that a downward

departure is inappropriate because Ehrlin's actions involved a serious threat of violence, and

Ehrlin's criminal history demonstrates there is a need to protect society.  Ehrlin is a convicted

sex-offender that was caught with multiple firearms including a semi-automatic rifle with high-

capacity magazines, items to impersonate a police officer, items to restrain an individual, body

armor, and ammunition stating, "DIE McLean," "FUCK FEDS," and "FUK BLM."  Regardless

of Ehrlin's claims of diminished capacity, protection of society is paramount, and the Court

should not depart down from the Guideline range.

**GOVERNMENT'S SENTENCING MEMORANDUM - 16**

The forensic psychologist's report further highlights the danger posed by Ehrlin (assuming his conclusions are true).

> **Prognosis.** The prognosis for Mr. Ehrlin's mental condition is poor regardless of behavioral health treatment modality or psychotropic medication since delusions are typically intractable and respond poorly to any treatment.

Further, the forensic assessment itself is premised upon a story told by Ehrlin, days after he had been arrested, that unidentifiable police officers blackmailed him into possessing all the incriminating evidence in this case and into acting as a radicalized sovereign citizen that will use violence against those with differing political views. The forensic examiner made a judgment call that colored the entirety of his report, that is, that Ehrlin truly believed this story. However, Ehrlin has no history of mental illness, nor did he report any of the "blackmail story" until days after his arrest. Moreover, Ehrlin's statement about the police badge, made on the day of his arrest, directly contradict the blackmail story. Specifically, Ehrlin told law enforcement that he and his mother found the Boise Police badge while out hiking. Ehrlin made no mention of being blackmailed in any capacity, nor did he allude to it in any way. Further, his attempted flight further belies his claim and demonstrates consciousness of guilt. Finally, the pants that Ehrlin wore provide valuable insight as well. Ehrlin wore tactical style tan pants, similar to those worn by Washington County Sherriff's Deputies. The independent evidence demonstrates Ehrlin did not suffer from delusions and acted purposefully.

**GOVERNMENT'S SENTENCING MEMORANDUM - 17**

Evidence recovered from Ehrlin's cell phone support this as well.  In a text message

conversation with his mother from October 12, 2020, while talking about Black Lives Matter

protests and counter-protests, Ehrlin sent the following text messages:

I can't wait until like five or six of these guys go down to an event like that watching all these rioters come up the street, they step out about a 50 yards off, they hear one guy begin yelling ready, Aim, Fire. And they just start killing a ton of these pieces of s*** in the street firing squad Style
**Source:** Phone
**Source Extraction:** Advanced Logical

Have a vehicle pre-loaded with magazines and extra rounds and Hand Grenades and just execute hundreds of them in the street put a f****** end to this crap and make it to where they're scared to even come out and "demonstrate"
**Source:** Phone
**Source Extraction:** Advanced Logical

I bet you anything something along those lines is going to happen it won't take more than two or three people for it to be hundreds of people dead new imagine people showing up to an event where there's 1000 people quote" demonstrating and they just start and they follow them they run after them the car drives with them they reload out of the trunk of the vehicle just like the guys who did the Hollywood bank robbery back in the 90s they had full body armor assault rifles a vehicle loaded with a ton of rounds and it took the police nearly two hours to stop them
**Source:** Phone
**Source Extraction:** Advanced Logical

I just know that the right-wing extremist elements are far more violent, meaning they're not the kind who will go out and burn buildings and protest in the street and beat people up there the people who will show up with a few of them a whole s*** ton of weapons and start killing people that is how they operate they are soldiers these people come back from Battle Ground where they fought Wars and done exactly that kind of behavior where they engaged in enemy they did it relentlessly they killed them without compulsion and they will do the same thing to anyone who threatens this country on our homeland I guarantee it
**Source:** Phone
**Source Extraction:** Advanced Logical

See the fundamental difference is that the left-wing extremists require Mass amounts of people surrounding them in order to do what they want to do because they fear the consequence without the support of a crowd, in contrast the right-wing extremists do not think that way they are the Timothy mcveigh's they are the Eric Rudolph's they are people who do not need Mass amounts of people surrounding them in order to feel comfortable about committing acts of violence or other criminal acts they are the type of people who with not more than two or three of them, could easily feel comfortable with body armor and assault rifles and pipe bombs going down to an event like that and executing Mass amounts of people in the street because they have assembled themselves on one side so to speak. It's literally like sitting back looking at an elk herd of 300 elk with an assault rifle on saying shoot till you run out_
**Source:**
**Source Extraction:** Advanced Logical

These text messages are just a sampling from Ehrlin's phone.

The evidence recovered from Ehrlin in this case, including body armor, a semi-automatic rifle, eight loaded high-capacity magazines, a semi-automatic pistol with four loaded magazines, spare ammunition, and ammunition with the writing "FUK BLM" are all consistent with preparation for the mass violence he described.



The forensic assessment itself recognizes the troubling nature of these text messages.  "A review of numerous text messages between Mr. Ehrlin, his mother and common-law spouse illustrate strongly anti-government views that advocated violence in graphic and extreme statements." (Forensic Assessment at 32.)  At bottom, these text messages do not square with the Ehrlin's story that he was blackmailed (or thought he was blackmailed) into performing the actions in this case.  Instead, they demonstrate Ehrlin acted purposefully and deliberately based on his hatred for the BLM movement, the federal government, and those with political viewpoints he disagrees with.

## CONCLUSION

Application of 18 U.S.C. § 3553 supports a sentence of 115 months for Ehrlin's commission of the crimes of Unlawful Possession of a Firearm and Assault of a Federal Employee.  The Government submits that a sentence of 115 months is sufficient, but not greater

than necessary, to accomplish the goals of sentencing, and that a lesser sentence is not supported by application of the 18 U.S.C. § 3553(a) factors.

 Respectfully submitted this 25th day of July, 2022.

       JOSHUA D. HURWIT
       UNITED STATES ATTORNEY
       By:


       */s/ Francis J. Zebari*
       FRANCIS J. ZEBARI
       Assistant United States Attorney

**GOVERNMENT'S SENTENCING MEMORANDUM - 20**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 25, 2022, the foregoing **GOVERNMENT'S**

**SENTENCING MEMORANDUM** was electronically filed with the Clerk of the Court using

the CM/ECF system, and that a copy was served on the following parties or counsel by:

| | |
|---|---|
| William Miles Pope<br>Federal Defender Services of Idaho Inc.<br>702 W. Idaho St, Suite 1000<br>Boise, ID 83702<br>Miles_Pope@fd.org | ☐ United States Mail, postage prepaid<br>☐ fax<br>☒ ECF filing<br>☐ email |

    /s/ Wendy Wheeler
    Legal Assistant

**GOVERNMENT'S SENTENCING MEMORANDUM - 21**